**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

JUN 2 2 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| COMPASS BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| SYLVIA B. OWENS, | § | **DR09CA040** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

Plaintiff Compass Bank files this Original Complaint complaining of Sylvia B. Owens, and respectfully shows as follows:

### PARTIES

1.      Plaintiff Compass Bank ("Compass Bank" or "the Bank") is an Alabama banking corporation duly authorized to do business in the State of Texas, and is the successor by merger to The Laredo National Bank ("LNB") (sometimes referred to collectively as the "Bank").

2.      Defendant Sylvia B. Owen ("Owens") is a former Executive Vice President and City President of LNB and Compass Bank.  She may be served with process at her residence located at HCR 3, Box 2, Quail Run, Del Rio, Texas 78840, or wherever she may be found.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000.00 and the parties are completely diverse citizens of different states.

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Compass Banks' claims occurred in Del Rio, Val Verde County, Texas.  Venue also is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c) because Owens is a resident of Val Verde County, Texas.

## BACKGROUND

5.    The Bank is a full-service bank with offices and operations in various locations in Texas, including a banking location in Del Rio, Texas.  The Bank provides a full array of banking and investment services to consumers, businesses, and institutions in Val Verde County and the area surrounding that county.  Through hard work and the expenditure of lots of time, money, expertise, and energy, The Bank developed a large clientele, long-term customer relationships, and considerable goodwill.  The Bank also developed and maintained confidential information that is important to the success of its business, including customer information and preferences.  Because banking is an extremely competitive business, The Bank's confidential information and trade secrets are highly valuable in securing a competitive advantage against other banks and financial institutions.

6.    Owens was the Executive Vice President for LNB and the City President for Compass Bank in Del Rio, Texas.  As Executive Vice President and City President , Owens regularly received confidential information regarding the conditions of the bank and its customers, including information about customer loans, deposits, credit and financial history and terms, and related information.  Owens specifically had access to: (i) customer information, including personal data

information, contact information, account balances, deposits, loan status, banking and investment preferences, and other relevant financial information, and (ii) information regarding business, operating, and marketing strategies and plans as well as information relating to the Bank's own workforce.

7.      In order to ensure continuity of operations, employment of personnel and customer relationships, and to retain Owens's expertise, dedication, and commitment, LNB employed Owens as an Executive Vice President and provided her with a lucrative financial package. In addition, the Bank reposed great trust and confidence in Owens and provided her with access to its confidential and proprietary information, some of which is described above, enabling her to perform her job duties.

8.      In exchange for her access to confidential and proprietary information, among other things, Owens executed the Retention Incentive & Non-Competition Agreement, attached hereto as *Exhibit A*, with LNB. The non-disclosure, non-competition, and non-solicitation obligations contained in the Agreement extend not only to LNB, but also to LNB's successors and assigns, *i.e.*, Compass Bank, which is the successor to LNB.[1] The Retention Incentive & Non-Competition Agreement contractually limits Owens's ability to disclose the Bank's confidential information, to work in competition against the Bank, and to solicit its employees and customers. In particular, Owens promised that during and subsequent to her employment with the Bank, she would not make independent use of, or disclose to any other person, any trade secrets or confidential information of the Bank or its subsidiaries or affiliates. *See Ex. A, p.3.* Further, Owens promised that during her employment with the Bank and for a period one (1) year thereafter, she would not: (i) engage in any

---

[1] The Retention Incentive & Non-Competition Agreement provides in the last paragraph of page 3 that it "shall be binding on and inure to the benefit of [LNB] and its successors and permitted assigns. *See Exhibit A*. On April 28, 2005, LNB was purchased by and became a wholly-owned subsidiary of Banco Bibao Vizcaya Argentaria, S.A. ("BBVA"). On September 7, 2007, BBVA merged with Compass Bank, which subsequently merged with LNB effective March 12, 2008.

competitive business; (ii) solicit or interfere with the Bank's customers; and (iii) solicit, hire, or attempt to hire the Bank's employees. *See Ex. A, p.2(i)-(iii)*.

9.    On June 1, 2009, Owens resigned her employment with the Bank, effective June 15, 2009. A copy of the letter is attached hereto as *Exhibit B*.

10.    On June 9, 2009, Texas Community Bank ("TCB") published a notice in the Del Rio News-Herald that on June 5, 2009 it had filed an application with the Comptroller of Currency on June 5, 2009 to establish a staffed branch at 305 S. Main Street, Del Rio, Texas 78840. A copy of the legal notice is attached hereto as *Exhibit C*.

11.    On information and belief, at or near the time of her resignation, Owens accepted employment with Texas Community Bank ("TCB") and agreed to become the President of its planned new location in Del Rio. TCB will be direct competitor of Compass Bank in Del Rio, Texas.

12.    Notwithstanding her contractual obligations, since resigning her employment with the Bank, current customers of the Bank have reported that Owens has solicited them to transfer their accounts and loans to a new bank. In contacting the Bank's customers, Owens has necessarily used the Bank's confidential information.

13.    Las week, Owens's husband went to the Bank and informed Bank personnel that Owens' new bank will be closing $8 million worth of loans in the next week and will be adding $15 million in deposits in the next few months.

14.    Since her separation, Owens' also has recruited two Bank employees, Norma Garza and Beverly Rosas, to leave the Bank's employment. Garza told Bank personnel that she was going to work for Owens. Both Garza and Rosas have been seen at the branch bank of TCB which has opened at 305 S. Main Street, two blocks from the main branch of the Bank in Del Rio.

15.     Owens's actions in working for TCB in competition against Compass Bank, and in soliciting the Bank's customers and employees are causing irreparable harm and damage to the Bank's business and goodwill for which there is no adequate remedy at law. The effect of Owens's wrongful acts, if allowed to continue, will be the diminution or compromise of the Bank's business interests, its goodwill, and its employment and business relationships, including those cultivated by its personnel and those cultivated by Owens while employed by the Bank.

16.     Compass Bank has given notice to Owens that she is violating the Retention Incentive & Non-Competition Agreement by competing in Val Verde County, Texas and soliciting Compass Bank's customers and asked that she cease and desist such activity. Owens has failed and refused to comply with the terms of the Retention Incentive & Non-Competition Agreement and, to the best of Compass Bank's knowledge and belief, continues to solicit its customers and engage in a competitive business.

17.     For these reasons, Compass Bank seeks a temporary restraining order, to be converted into a preliminary and permanent injunction, which will prohibit Owens from disclosing the Bank's confidential information, from working in competition against Compass Bank in Val Verde County, and from soliciting Bank employees and the customers of Compass Bank that either Owens or someone she supervised provided services to during Owens's period of employment with the Bank.

## COUNT ONE:  BREACH OF CONTRACT - NON-SOLICITATION AGREEMENT
## (CUSTOMERS)

18.     Compass Bank realleges and incorporates by reference the allegations made in the above paragraphs.

19.     Owens is a party to a contractual agreement with the Bank. Owens has breached her agreements not to solicit the Bank's customers. This breach of contract has and will cause the Bank irreparable harm for which injunctive relief shall be warranted. Further, this breach of contract has

PLAINTIFF'S ORIGINAL COMPLAINT - PAGE 5

and will cause the Bank to sustain significant actual damages. To the extent the Bank can prove such damages, or any part of such damages, with the degree of reasonable certainty required by law, the Bank is entitled to recover the amount of such damages.

20.    All conditions precedent have been performed or have occurred.

## COUNT TWO:  BREACH OF CONTRACT - NON-SOLICITATION AGREEMENT
## (EMPLOYEES)

21.    Compass Bank realleges and incorporates by reference the allegations made in the above paragraphs.

22.    Owens is a party to a contractual agreement with Compass Bank.  Owens has breached her agreements not to solicit Compass Bank's employees. This breach of contract has and will cause Compass Bank irreparable harm for which injunctive relief shall be warranted.  Further, this breach of contract has and will cause Compass Bank to sustain significant actual damages.  To the extent Compass Bank can prove such damages, or any part of such damages, with the degree of reasonable certainty required by law, Compass Bank is entitled to recover the amount of such damages.

23.    All conditions precedent have been performed or have occurred.

## COUNT THREE: BREACH OF CONTRACT – NON-COMPETITION AGREEMENT

24.    Compass Bank realleges and incorporates by reference the allegations made in the above paragraphs.

25.    Owens is a party to a contractual agreement with Compass Bank.  Owens has breached her agreements not to compete with Compass Bank. This breach of contract has and will cause Compass Bank irreparable harm for which injunctive relief shall be warranted.  Further, this breach of contract has and will cause Compass Bank to sustain significant actual damages.  To the extent Compass Bank can prove such damages, or any part of such damages, with the degree of

reasonable certainty required by law, Compass Bank is entitled to recover the amount of such damages.

26.    All conditions precedent have been performed or have occurred.

## COUNT FOUR:  APPLICATIONS FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

27.    Compass Bank realleges and incorporates by reference the allegations made in the above paragraphs.

28.    Compass Bank requests a temporary restraining order, preliminary injunction, and permanent injunction enjoining Owens from breaching the above-referenced common law and contractual duties.  The temporary restraining order, preliminary injunction, and permanent injunction should restrain Owens from:  (i) from using or disclosing the Bank's confidential information, (ii) from directly or indirectly competing against the Bank in Val Verde County, (iii) from soliciting any past or present customer of Compass Bank, LNB or any of its predecessors or successors that existed prior to Owens's separation date of June 2, 2009, and that Owens or those she supervised provided services to while she was employed by the Bank, and (iv) from soliciting any employee that was employed by the Bank at any time during Owens's employment with the Bank.

29.    Compass Bank is entitled to a temporary restraining order and preliminary injunction because, absent such injunctive relief, it will suffer irreparable injury for which there is no adequate remedy at law during the period of time between the hearing on this application and trial.  Compass Bank will likely prevail at trial because, for the reasons set forth above, the agreement between Owens and Compass Bank is fully enforceable and Owens has already breached it.

30.    The harm to Compass Bank described in this Complaint associated with Owens's actions in soliciting its customers is clearly greater than the hardship of Owens if the temporary restraining order is issued.  Also, granting injunctive relief in this case will have no adverse effect on

public interest, and in fact, serves to protect the public interest of enforcing a party's contractual rights.

31.     Compass Bank has given notice to Owens that it seeks to enforce the Retention Incentive & Non-Competition Agreement and that Compass Bank intends to seek injunctive relief.

32.     Compass Bank is willing to post a bond in the amount specified by the Court if necessary. Additionally, if necessary, Compass Bank requests the Court to reform the agreements as provided by Tex. Bus. & Com. Code § 15.51(c).

### COUNT FIVE: ATTORNEYS' FEES

33.     Compass Bank realleges and incorporates by reference the allegations made in the above paragraphs.

34.     Owens's conduct, as described above, has made it necessary for Compass Bank to employ the undersigned attorneys to represent it in this matter. Compass Bank has agreed to pay the undersigned attorneys a reasonable fee for such services. Compass Bank is entitled to recover such fees incurred herein and in all subsequent appeals pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8).

WHEREFORE, Compass Bank prays that Owens be cited to appear and answer herein and that, upon trial of this cause, it have relief as follows:

(a)     grant Compass Bank's application for temporary restraining order restraining Owens from: (i) from using or disclosing the Bank's confidential information, (ii) from directly or indirectly competing against the Bank in Val Verde County, (iii) from soliciting any past or present customer of Compass Bank, LNB or any of its predecessors or successors that existed prior to Owens's separation date of June 2, 2009, and that Owens or those she supervised provided services to while she was employed by the Bank, and (iv) from soliciting any employee that was employed by the Bank at any time during Owens's employment with the Bank.;

PLAINTIFF'S ORIGINAL COMPLAINT - PAGE 8

(b)    schedule an evidentiary hearing on Compass Bank's application for preliminary injunction;

(c)    after a hearing, grant Compass Bank's application for preliminary injunction restraining Owens from: (i) from using or disclosing the Bank's confidential information, (ii) from directly or indirectly competing against the Bank in Val Verde County, (iii) from soliciting any past or present customer of Compass Bank, LNB or any of its predecessors or successors that existed prior to Owens's separation date of June 2, 2009, and that Owens or those she supervised provided services to while she was employed by the Bank, and (iv) from soliciting any employee that was employed by the Bank at any time during Owens's employment with the Bank.;

(d)    after trial, enter a final judgment containing a permanent injunction restraining Owens from: (i) from using or disclosing the Bank's confidential information, (ii) from directly or indirectly competing against the Bank in Val Verde County, (iii) from soliciting any past or present customer of Compass Bank, LNB or any of its predecessors or successors that existed prior to Owens's separation date of June 2, 2009, and that Owens or those she supervised provided services to while she was employed by the Bank, and (iv) from soliciting any employee that was employed by the Bank at any time during Owens's employment with the Bank, and awarding Compass Bank damages in an amount in excess of $75,000 exclusive of interest and costs the minimum jurisdictional limits of this Court, including exemplary damages, according to the proof at the time of trial;

(e)    award Compass Bank its reasonable attorneys' fees incurred in connection with the prosecution of this action, costs of suit incurred herein, and interest awardable to Compass Bank by law; and

(f)    any other relief to which Compass Bank may be entitled.

Respectfully submitted,

_____

Michael W. Fox
State Bar No. 07335500
Bruce A. Griggs
State Bar No. 08487700
Frank Davis
Texas Bar No. 24031992
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 Congress Ave., Suite 1150
Austin, Texas 78701
(512) 344-4700 (Telephone)
(512) 344-4701 (Fax)

Ronald F. Ederer
State Bar No. 06418000
411 Heimer Road
San Antonio, TX, 78232


**ATTORNEYS FOR PLAINTIFF**
**COMPASS BANK**

03/01/07  THU 10:19 FAX 7139244934

# THE LAREDO NATIONAL BANK

February 22, 2007

Ms. Sylvia B. Owens
Regional President
DR-Main Retail Banking Division

Re: <u>Retention Incentive & Non-Competition Agreement</u>

Dear Ms. Owens:

We are pleased to inform you that you have been selected to participate in The Laredo National Bank's (the "Company") executive retention and severance protection program, subject to the terms and conditions set forth below. Pursuant to the program, you will have an opportunity to earn *either* a retention bonus ("Retention Incentive") or a Severance Payment ("Severance Payment"), as described below.

You acknowledge that you have had and will continue to have a prominent role in the Company in and the development of goodwill of the Company and its subsidiaries, and that you have established and developed and will continue to establish and develop relations and contacts with the principal customers and suppliers of the Company and its subsidiaries, all of which constitute valuable goodwill of, and could be used by you to complete fairly with, the Company and its affiliates. Furthermore, in the course of your employment with the Company, you have obtained and will continue to obtain confidential and proprietary information and trade secrets concerning the business and operations of the Company and its affiliates that could be used to complete unfairly with the Company and its affiliates. Accordingly, you agree to comply with the covenants relating to non-competition, non-solicitation, non-disparagement and non-disclosure contained in this letter agreement.

## <u>RETENTION INCENTIVE *OR* SEVERANCE PAYMENTS ON A TERMINATION WITHOUT CAUSE</u>

*Retention Incentive.* In consideration of your continued employment with the Company and your execution and compliance with the non-solicitation and non-competition restrictions below, you are eligible to receive a Retention Incentive payment equal to $60,212. In all cases, payment of the Retention Payments will be subject to your continued employment with the Company until the second year anniversary of the Effective Date of this letter agreement (as defined below). Provided you remain so employed, your Retention Incentive payment will be made to you in two installments. You will receive $20,071 on your one year anniversary of the Effective Date and $40,141 on your second anniversary of the Effective Date or as soon as reasonably practicable thereafter. In the event that your employment with the Company terminates for any reason prior to the second anniversary of the Effective Date, you will not be entitled to payment of any unpaid portion of the Retention Incentive.

1



*Severance Payment.* In the event that your employment with the Company is terminated by the Company without Cause (as defined below) at any time prior to the second anniversary of the Effective Date, you will be entitled to receive a Severance Payment in lieu of the Retention Incentive payment equal to $120,424. Payment of the Severance Payment will be made to you in one cash lump sum within 30 days following your termination of employment. Such Severance Payment shall replace and supersede in its entirety any other severance plans, policies or programs maintained by the Company. In the event of your termination for any reason at any time after the two year period following the Effective Date by the Company without Cause, you will not be entitled to any severance or other payment or benefit under this letter agreement.

## NON-COMPETITION, NON-SOLICITATION, NON-DISPARAGEMENT & NON-DISCLOSURE RESTRICTIONS

During the period of your employment with the Company and for the one year immediately following your termination of employment with the Company for any reason (the "Restriction Period"), you shall not, directly or indirectly, for your own account or for the account of any other person, firm or entity:

(i)     become employed by, engage in business with, serve as an agent or consultant to, or become a partner, member, principal or stockholder (other than a holder of less than 5% of the outstanding voting shares of any publicly held company) of, any person, firm or entity that competes or has a reasonable potential for competing with any part of the business of the Company or any of its subsidiaries, in any place that the Company or any of its subsidiaries conducts business during your employment with the Company;

(ii)     solicit for employment, employ or otherwise interfere with the relationship of the Company or any of its affiliates with any person who is or was employed by or otherwise engaged to perform services for the Company or any of its affiliates at any time during which you are employed by the Company;

(iii)     solicit or otherwise attempt to establish any business relationship of a nature that is competitive with the business or relationship of the Company or any of its affiliates with any person, firm or entity which is or was a customer, client or distributor of the Company or any of its affiliates at any time during which you are employed by the Company, other than any such solicitation on behalf of the Company or any of its affiliates during your employment with the Company; and

(iv)     disparage or make negative statements (or induce or encourage others to disparage or make negative statements) about the Company or any of its past or present officers, directors, agents, employees, attorneys, successors and assigns, including, without limitation, disparaging any of such parties in connection with disclosing the facts or circumstances surrounding Executive's termination of employment with the Company or criticizing the Company's business strategy. For the purposes of this subparagraph, the term "disparage" means any comments or statements which would adversely affect in any manner: (i) the conduct of the Company's business; or (ii) the business reputation or relationships of the

2

Company and/or any of its past or present officers, directors, agents, employees, attorneys, successors and assigns.

*Unauthorized Disclosure.* During the Restriction Period and following the term of this Agreement, except where required by law, statute, regulation or rule of any governmental body or agency, or pursuant to a subpoena or court order, you shall not, directly or indirectly, for your own account or for the account of any other person, firm or entity, use or disclose any confidential or proprietary trade secrets, customer lists, drawings, designs, information regarding product development, marketing plans, sales plans, manufacturing plans, management organization information (including but not limited to data and other information relating to members of the Company's Board of Directors of any of the Company's affiliates or to management of the Company or any of its affiliates), operating policies or manuals, business plans, financial records, packaging design or other financial, commercial, business or technical information (a) relating to the Company or any of its affiliates or (b) that the Company or any of its affiliates may receive belonging to suppliers, customers or others who do business with the Company or any of its affiliates (collectively, "Confidential Information") to any third person unless such Confidential Information has been previously disclosed to the public or is in the public domain (other than by reason of your breach of this paragraph).

For purposes of this letter agreement, the term "Cause" means any one or more of the following conduct by you: (i) dishonesty, fraud, gross negligence in the performance of your duties hereunder or engaging in willful misconduct (ii) willful and continued failure to perform your duties assigned to you (iii) the commission of a felony or any crime involving moral turpitude, or (iv) any breach by you of any of the restrictive covenants in this or any other agreement between the you and the Company; provided that (x) the Company shall have delivered written notice to you of the Company's intention to terminate your employment for Cause, which notice specifies the circumstances claimed to give rise to the Company's right to terminate your employment for Cause, and you shall have failed to cure such circumstances (if such circumstances are reasonably susceptible to cure) to the reasonable satisfaction of the Company within 10 days of the date of such notice and (y) the Company delivers a notice of termination of employment to you within 10 days following your failure to cure such circumstances within the time period specified above.

\*    \*    \*    \*    \*    \*    \*    \*    \*

Your employment pursuant to this letter agreement is not a guarantee of employment. The Company may terminate your employment with or without cause and at any time. You are an at-will employee of the Company.

This letter agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and all promises, representations, understandings, arrangements and prior arrangements relating to such subject matter are merged herein and superseded hereby.

This letter agreement shall be binding on and inure to the benefit of the Company and its successors and permitted assigns. This letter agreement shall also be binding on and inure to the benefit of you and your heirs, executors, administrators and legal representatives.

3

This letter agreement shall be governed by and construed in accordance with the laws of the State of Texas without reference to principles of conflicts of laws which would require the application of the laws of another jurisdiction.

The terms of this letter agreement are confidential, and are intended to remain strictly confidential. By signing this letter agreement, you covenant not to disclose any of the terms of this letter agreement, whether generally or specifically, to any third party, except as may be required by order of a court of competent jurisdiction.

If you are in agreement with the foregoing, please sign the enclosed copy of this letter agreement indicated below and return a signed copy to Javier Lozano, at 700 San Bernardo Ave., Laredo, TX 78040, within 10 days of your receipt of this letter agreement. This letter agreement shall become effective upon receipt by the Company of the executed copy of this letter agreement (the "Effective Date").

THE LAREDO NATIONAL BANK

Javier Lozano
Senior Vice President

Accepted and agreed this
22nd day of February, 2007

Sylvia B. Owens

4

June 1, 2009


BBVA Compass
Attn: Pat Sandoval
Via Email
Laredo, TX

To Whom It May Concern:

Please accept this as my formal letter of resignation from BBVA
Compass effective June 15, 2009.  I will be happy to assist you in any
way possible during this next two-week period.

I wish to express my sincere gratitude for the opportunities,
experiences, and friendships during the last nineteen years with the
DRNB, STNB, LNB, and BBVA families.  We have been through
many changes and are much stronger for having had the opportunity
of this journey.

Sincerely,

Sylvia B. Owens



Past Week Search Advanced | Help

Register | Sign In | Subs

# DEL RIO NEWS-HERALD

Friday, June 19, 2009 | Serving Del Rio and Val Verde County: Since 1929

Home

Marketplace

Classifieds

Jobs

Homes

Autos

Place an ad

Special Sections

Newspaper Ads

Sections

News

En Español

Columns

Sports

Lifestyle

Obituaries

Around Town

Announcements

Communities

The Front Page

Photo Gallery

Weather

Email Extra

Mobile News

RSS

1-Month View

Search

AP News

Top News

Latin America

Texas

Nation

Politics

Business

Technology

Print ads for: **Texas Community Bank (Public Notice)**

To see this image at full size, **Click Here** or on the image below.

Published on June 09, 2009



Sports
Health
Arts
Service Center
Service Home
Circulation
Home Delivery
Back Issues
Vacation Stops

Notification is given that Texas Community Bank, N.A., 6721 McPherson Rd., Laredo, Texas 78041 has filed an application with the Comptroller of the Currency on June 5, 2009 as specified in 12 CFR 5 for permission to establish a staffed branch at 305 S. Main Street, Del Rio, Texas 78840. Any person wishing to comment on this application may file comments in writing with the licensing manager, Soutwestern District Office, 500 North Akard Street, Suite 1600, Dallas, Texas 75201 or SW.licensing@occ.treas.gov within 30 days of the date of this publication.

Return to Print Ads

**Serving Del Rio and Val Verde County since 1929**

Home | Subscribe | About Us | Search | Mobile News
Classifieds | Write a Letter | Site Help

© 2009 Del Rio News-Herald. All rights reserved.

A Southern Newspapers publication.

http://delrionewsherald.com/printads-low.lasso?ad=June.2009/Tx-Community-Bank.jpg          6/19/2009

Notification is given that Texas Community Bank, N.A., 6721 McPherson Rd., Laredo, Texas 78041 has filed an application with the Comptroller of the Currency on June 5, 2009 as specified in 12 CFR 5 for permission to establish a staffed branch at 305 S. Main Street, Del Rio, Texas 78840. Any person wishing to comment on this application may file comments in writing with the licensing manager, Soutwestern District Office, 500 North Akard Street, Suite 1600, Dallas, Texas 75201 or SW.licensing@occ.treas.gov within 30 days of the date of this publication.